**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ONEAL JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-17062 |
| | ) | Hon. Judge Lindsay Clayton Jenkins |
| ALLURE LIFESTYLE COMMUNITIES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

SUMMARY OF MATERIAL FACTS ................................................................ 1

STANDARD OF REVIEW ................................................................................. 5

ARGUMENT ...................................................................................................... 6

    I.      Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law ......................... 6

         A.  Plaintiff Was Not a "Qualified Individual" Under the ADA ................................. 6

         B.  Plaintiff Did Not Make Any Clear and Specific Request for Accommodation...... 7

    II.     Plaintiff's Discrimination and Wrongful Termination Claim Fail as a Matter of Law 9

    III.    Plaintiff's Retaliation Claims Fail as a Matter of Law ................................................ 10

    IV.   Plaintiff's Harassment Claims Fail as a Matter of Law .............................................. 12

         A.  There is No Evidence the Alleged Harassing Conduct was Race or Disability-Based or Severe and Pervasive ............................................................................ 13

         B.  There is No Basis for Employer Liability ............................................................ 14

    V.     Plaintiff's Remaining Claims are Unrecognized and Have No Legal Basis .............. 15

CONCLUSION .................................................................................................... 15

## INTRODUCTION[1]

Plaintiff ONeil Johnson alleges harassment, discrimination, and "wrongful termination" due to his race, color, disability, and alleged protected activity under Title VII, Section 1981, and the ADA. The undisputed facts in the record tells a different story. Other than his termination, Plaintiff did not experience any adverse action. He never identified any workplace limitations caused by his medical conditions, never requested an accommodation, and never informed the decisionmaker of any disability or protected activity. His vague allegations of generalized "harassment" by two managers – one of whom he did not report to – reflect, at most, workplace incivility and perceived slights, not actionable discrimination. There is no evidence that any alleged mistreatment was motivated by his race, disability, or protected activity. Instead, the record confirms that he was terminated for a documented pattern of unprofessional conduct, dishonesty, and insubordination, not for any unlawful reason. Summary judgment should be granted.

## SUMMARY OF MATERIAL FACTS

Defendant Allure Lifestyle Communities is a property management company that operates active adult and independent living senior communities, including the Hanover Place Apartments. SOF ¶ 2. Plaintiff Oneal Johnson ("Plaintiff"), a Black male, was employed by Defendant at the Hanover Place as an at-will employee from in or about February 2022 until his termination on August 12, 2022. SOF ¶¶ 2,9. Plaintiff was hired as Maintenance Technician and later promoted Maintenance Director in Spring 2022. SOF ¶ 9. In both roles, he reported directly to the Property Manager, Thomas Holmes (Black) and was responsible for the overall maintenance and operation of the property and the preparation of vacant units for new residents. SOF ¶¶ 10-11.

---

[1] Capitalized terms not defined herein shall have the same meaning set forth in Defendant's Statement of Undisputed Material Facts ("SOF").

Plaintiff testified that his workplace conflict began after the Hanover Place management selected Plaintiff's preferred vendor, replacing a vendor affiliated with Assistant Property Manager, Christina Tuohy (White), whom Plaintiff believed to be her family members. SOF ¶ 17. He testified that while Tuohy previously "used to love [his] work", her demeanor towards him changed following this decision, and she began "harassing" him during their daily staff "meetings ("stand-up" meetings). SOF ¶¶ 18-21,22. He described this conduct as yelling, telling him that he was too loud, slamming her pen, storming out, and occasional profanity. SOF ¶ 22. Plaintiff testified that the conduct was motivated by both her personal resentment over the vendor selection and, in his view, race. SOF ¶ 23,49. However. when asked for the basis for this belief, he did not identify any facts or conduct beyond his speculation that she may have "hated" the fact that he was Black, his vendors were "Mexican," and "her family was white and we took her jobs." SOF ¶ 23.

Plaintiff testified that he raised concerns about Tuohy's behavior to Holmes, who responded by arranging for Lee Williams (Black), Maintenance Technician, to speak for the maintenance team during meetings to reduce tension, and telling Plaintiff that if he wished to speak, to ask Holmes—an arrangement Plaintiff stated worked for a brief period. SOF ¶ 26. Holmes also arranged a meeting with Plaintiff and Tuohy to resolve their conflict. SOF ¶ 27.

Plaintiff has been diagnosed with depression and PTSD and uses medication and therapy to manage his conditions. SOF ¶ 28. Plaintiff did not disclose his PTSD or depression at the time of his hire, nor did he submit any medical documentation regarding any mental health condition or formally request a workplace accommodation at any time during his employment. SOF ¶ 30. He now claims to have verbally disclosed his conditions to four individuals: Holmes, Tuohy, Veronica Beekman (White), a regional manager, and Sherry Wright (White), a regional manager who assumed oversight of Hanover Place in April 2022 after Beekman's departure. SOF ¶¶ 14, 32-33.

2

Plaintiff testified that he suggested to Holmes that he could signal to Plaintiff to lower his volume if his voice ever "carried" or became "loud," but when asked directly whether he told Holmes that his voice carried *because of* his PTSD and depression, Plaintiff denied this, stating: "No, I'm a loud person anyway. I talk loud." SOF ¶ 36. He reiterated that he did not link his volume to his PTSD or depression and confirmed that neither condition impacted his ability to perform his job. He confirmed that neither his PTSD nor depression impacted his ability to work, and, when asked what kind of accommodation he required in order to perform his duties at Hanover Place, he further testified, "[i]t ain't nothing that I needed." SOF ¶ 29.

On August 1, 2022, Plaintiff was issued a Written Counseling for communicating false information on unit turns and failing to follow apartment turnover procedures, including misrepresenting during a stand-up meeting that a unit was move-in ready when it had not been properly cleaned or completed. SOF ¶ 41. The counseling form also noted that Plaintiff had previously been counseled on multiple occasions regarding the need to notify Holmes of unit readiness and to turn in documentation to Delaneo Johnson ("DJ") (Black), the Property's Leasing Manager, when the unit was complete for inspection. SOF ¶¶ 12, 41.

Plaintiff disputes the validity of this discipline and believes DJ "conspired" with Tuohy to "set [him] up" both to help Tuohy and deflect blame for allowing a resident to arrive to a unit that was not move-in ready. SOF ¶ 43. Plaintiff offers no other evidence to support this belief, other than observing Tuohy and DJ have a private meeting after Tuohy left a meeting upset, weeks prior. SOF ¶ 43. Plaintiff also claims that DJ would "harass" him by raising his voice and speaking disrespectfully to Plaintiff in public spaces, including when Plaintiff attempted to speak to the Property's receptionist, but he did not identify any specific statement made by DJ. SOF ¶¶ 50-51.

Nor did he connect DJ's conduct to Plaintiff's race, disability, or any other protected characteristic, or claim his conduct was in retaliation for any protected activity. SOF ¶ 51.

In response to his written warning, Plaintiff contacted the resident involved in the incident and requested pictures of the unit. SOF ¶ 44. He also prepared and mailed a written "grievance" to Randy Geouque (White), Defendant's Chief Administrative Officer responsible for Defendant's Human Resources and Administration functions. SOF ¶¶ 15, 46. Plaintiff testified that the grievance included all the reasons he believed at that time justified rescinding his discipline. SOF ¶ 46. However, it made no mention of Tuohy, his race, any medical conditions or disabilities, or any allegations of discrimination, harassment, or retaliation. SOF ¶ 47.

The following week, on August 10, 2022, Tuohy and Holmes reported to Wright that Plaintiff had disrupted a meeting that morning and that several residents had complained that he was banging on their doors, asking about move-in and the work in their units, which made them feel threatened. SOF ¶ 58. Wright and Williams testified that maintenance staff should not approach a resident's door absent a work order, and Wright characterized such conduct as threatening. SOF ¶¶ 59-60. When she called Plaintiff to discuss the reports, he initially denied approaching residents' doors but then admitted he had approached a resident's unit and asked about their move-in. SOF ¶¶ 62-63. In response, Wright suspended Plaintiff pending a Human Resources investigation. SOF ¶ 64.

After her call with Plaintiff, Wright reported the matter to Geouque. SOF ¶ 65. Geouque conducted an investigation, interviewing Wright, Touhy, and Holmes. SOF ¶ 66. Holmes and Tuohy confirmed to Geouque that Plaintiff became loud and argumentative during their August 10 meeting and described prior disruptive incidents involving Plaintiff. SOF ¶ 67. Holmes also relayed that multiple residents and vendors had complained about Plaintiff. SOF ¶ 67.

Following Plaintiff's suspension, Tuohy prepared a corrective action form memorializing the suspension, which she emailed to Wright and Geouque on August 12, 2022. SOF ¶ 71. Later that day, as part of his investigation, Geouque called Plaintiff to discuss Plaintiff's grievance, the August 10 incident, and the reports Geouque had received, as well as to give Plaintiff an opportunity to explain his account of events. SOF ¶ 72. Geouque testified that at the time of the call, he did not know Plaintiff had a disability, had never received any notification of Plaintiff requesting an accommodation, and was unaware of any issues regarding Plaintiff's race, disability, or need for accommodation. SOF ¶ 73. At no time during the call did Plaintiff attribute his discipline and conflicts in the workplace to discrimination or retaliation. SOF ¶ 74. Instead, Plaintiff became argumentative, aggressive, and insubordinate towards Geouque, yelling and using profanity and denying any wrongdoing. SOF ¶ 75.

Based on Plaintiff's conduct during the call and the broader investigation conducted, Geouque decided to terminate Plaintiff's employment, believing Plaintiff's behavior on the call demonstrated a behavioral pattern that would continue. SOF ¶ 76. Geouque terminated Plaintiff effective immediately due to Plaintiff's pattern of misconduct, including his dishonesty, unprofessional behavior, and insubordination. DSOF ¶ 77. Williams replaced Plaintiff as Maintenance Director. SOF ¶ 16.

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). Though the court draws all inferences in the nonmovant's favor, he is not entitled to inferences supported only by speculation or conjecture. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). "If there is no triable issue of fact on even one essential element of the nonmovant's case, summary judgment is appropriate." *Id*.

## ARGUMENT

**I.      Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law**

To prevail on an ADA failure to accommodate claim, Plaintiff must show: 1) he was a "qualified individual" with a disability; (2) Defendant was aware of Plaintiff's disability; and (3) Defendant failed to reasonably accommodate Plaintiff's disability." *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1053 (7th Cir. 2024).

### A.      Plaintiff Was Not a "Qualified Individual" Under the ADA

Plaintiff's claim fails at the outset because he cannot demonstrate that he was a "qualified individual" under the statute—a threshold requirement for any failure to accommodate claim. *Anderson v. Lawrence Hall Youth Servs.*, No. 23-2613, 2024 WL 1342586, at *2 (7th Cir. Mar. 29, 2024), *reh'g denied*, No. 23-2613, 2024 WL 1979971 (7th Cir. May 3, 2024). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8); *see Grevas v. Vill. of Oak Park*, 235 F. Supp. 2d 868 (N.D. Ill. 2002) (ADA employee with depression "not qualified to perform essential functions of her job, in light of demonstrated inability to get along with coworkers such that her continued employment became disruptive to the work force."). Due to Plaintiff's pattern of misconduct, unprofessional behavior, and inability to follow procedures, "no reasonable jury could find that [he] was capable of performing the essential functions of his job in a manner that met Defendant's legitimate business expectations, with or without accommodation." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 863 & n.8 (7th Cir. 2005) (court did not commit error when it "considered evidence of [plaintiff's] careless behavior, poor attitude, insubordination, and deficient work performance when considering whether he was a qualified individual").

### B.      Plaintiff Did Not Make Any Clear and Specific Request for Accommodation

Even assuming Plaintiff was ever a "qualified individual," his claim still fails the second prong. The ADA imposes no obligation on an employer to accommodate an employee's disability unless and until the employee fulfills his "initial duty to indicate to his employer he has a disability and desires an accommodation." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005) (internal citations omitted). Plaintiff did neither. Plaintiff gave inconsistent and unsupported testimony regarding his disclosure of his PTSD and depression, contradicting his written discovery, failing to provide even roughly approximate dates, supplying no contemporaneous corroborating documentation. Wright denied any such disclosure, and Plaintiff conceded that he never informed Geouque, despite addressing a detailed grievance to him.

Plaintiff produced text messages from August 3 and August 9, 2022, after he received his written counseling, in which he told Holmes he was "sick", asked that DJ go easy on him, which he now claims were references to his depression. SOF ¶¶ 52-56. Nothing in the language of his messages remotely suggests that Plaintiff was raising concerns about a disability, and his *post hoc* characterization of these texts is specious at best. In the same exchange, he informed of a doctor's appointment the next day, and the evidentiary record confirms that the following morning, he underwent blood work in connection with treatment by a urologist, Dr. Adam Murphy. SOF ¶ 57.[2] Even so, Holmes responded agreeing to speak to DJ, as Plaintiff requested. SOF ¶ 55.

Notwithstanding that Defendant does not concede – and the record does not reflect – that Plaintiff clearly disclosed his PTSD and depression to any supervisor, an employer's knowledge of an employee's disability, standing alone, does not require an assumption that the employee has

---

[2] The Court may take judicial notice that Northwestern's public website confirms that Dr. Adam Murphy's practice is urology. *See* Adam B. Murphy, M.D., Northwestern Medicine (last updated 2025), https://www.nm.org/doctors/1952563157/adam-b-murphy-md.

workplace limitations. *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 494 (7th Cir. 2014). Nor does such knowledge trigger any duty to accommodate absent a clear connection between the disability and what the employer knows about the employee's specific limitations. *Id.*; *see Leeds v. Potter*, 249 F. App'x 442, 449-50 (6th Cir. 2007) ("[W]hile…employee need not use the magic words' accommodation' or even 'disability,' the request does need to make it clear from the context that it is being made in order to conform with existing medical restrictions.").

Moreover, had Plaintiff engaged in conduct sufficient to trigger the interactive process, any breakdown in that process is actionable only if it prevents identification of an appropriate accommodation. *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). Here, Plaintiff testified that neither his PTSD nor his depression impacted his ability to perform his job. When asked directly what kind of accommodation he required, he stated: "[i]t ain't nothing that I needed." To the extent instructing others to alert him if his voice elevated can be construed as an accommodation request, he admitted he is "a loud person anyway" and the tendency for his voice to carry is not tied to his medical conditions. Ironically, his claim of harassment by Tuohy is based in part on her doing just that—telling him when he was getting loud.

In sum, the record contains no evidence Plaintiff requested, was denied or, by his own admission, needed any accommodation. Plaintiff dubiously claims that he experienced symptoms of his conditions only when Tuohy and DJ "harassed" him, SOF ¶ 48, yet his nonspecific complaints were never linked to any medical condition, limitation, or need for adjustment of his job duties or environment.[3] Yet despite the absence of any formal accommodation request, Holmes nonetheless took appropriate and reasonable steps to address Plaintiff's concerns: confirming that

---

[3] Nor did his opposition to this perceived mistreatment, untethered to any ADA accommodation request, constitute protected activity under the ADA. *See Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1055–56 (7th Cir. 2024); *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018).

he would speak to DJ, adjusting the format and speaking roles in morning stand-up meetings, and facilitating a meeting with Tuohy. There is no evidence that the interactive process failed or that Plaintiff was denied any reasonable accommodation. Summary judgment is proper.

## II. Plaintiff's Discrimination and Wrongful Termination Claim Fail as a Matter of Law

In evaluating the merits of employment discrimination cases, the Seventh Circuit has ruled that the applicable standard at summary judgment is whether the evidence would permit a reasonable factfinder to conclude that Plaintiff's protected characteristic caused the adverse employment action. *See Ortiz v. Werner Enters., Inc*., 834 F.3d 760, 765 (7th Cir. 2016). Even if a plaintiff uses the *McDonnell Douglas* framework to present evidence, when the defendant offers a nondiscriminatory explanation for its employment decision, the court may proceed directly to pretext inquiry. *Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024).

Here, Defendant has met that burden. Plaintiff was terminated for a documented pattern of misconduct, including dishonesty, unprofessional behavior, and insubordination, following. an internal independent investigation by Geouque. After receiving multiple reports from management of disruptive behavior and resident and vendor complaints involving Plaintiff, Geouque spoke with Plaintiff to discuss his grievance and these reported incidents. Plaintiff's insubordinate and combative conduct during the call led Geouque to conclude that it was emblematic of an ongoing and continuing pattern of behavior that would not improve, leading him to decide during the call to immediately terminate Plaintiff's employment.

Plaintiff cannot show that Defendant's stated reason is pretext. "Pretext is defined as a dishonest explanation, a lie rather than an oddity or an error." *Vassileva*, 118 F.4th at 874 (cleaned up). In addition to the reports received from Holmes and Tuohy, Wright testified that she personally observed Plaintiff's disruptive behavior during stand-up meetings. SOF ¶ 63. Williams

testified that multiple residents directly reported to him that they experienced intimidating behavior from Plaintiff and requested that their maintenance requests be reassigned to him. SOF ¶ 68. Plaintiff's own admissions and text messages confirm that he independently approached residents without a work order to solicit information about their move-in, behavior Wright deemed threatening and inappropriate. Indeed, the contacted resident provided these text messages to Tuohy prior to Plaintiff's termination and later expressly stated they did not want to be involved in Plaintiff's workplace dispute, underscoring the unprofessional nature of Plaintiff's unsolicited contact. SOF ¶ 45. Simply put, there can be no reasonable argument that Plaintiff was meeting Defendant's legitimate business expectations. *See Hammel*, 407 F.3d at 863 ("[The ADA] does [not] protect an employee who is insubordinate and refuses to obey and accept direct orders from his supervisors....").

### III.     Plaintiff's Retaliation Claims Fail as a Matter of Law

To prevail on his retaliation claims Title VII, Section 1981, or the ADA, Plaintiff must identify evidence showing that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there exists a causal connection between the two. *See Lewis*, 909 F.3d at 866; *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680-81 (7th Cir. 2015); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

As a threshold matter, Plaintiff's retaliation claim requires evidence that he engaged in a protected activity. Here, there is none. The record shows Plaintiff's complaints, written or verbal, never linked his concerns to race, disability, or other statutorily protected category or conduct. His complaints instead focused on general performance-related grievances, disrespectful conduct, and workplace tension, none of which is protected under these statutes. *See Giese v. City of Kankakee*, 71 F.4th 582, 591 (7th Cir. 2023) (where "nothing in the record suggests [plaintiff] informed

human resources that she believed she was being discriminated against *on the basis of her [protected class]* . . . this conversation cannot constitute protected activity"); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference," is insufficient to constitute protected activity). Plaintiff's claims that he told management (but not Human Resources) that the alleged harassment was making him "sick" or "affecting" him does not alter this analysis. Alleging workplace conflict *exacerbated* his PTSD and depression—medical conditions there is no evidence he clearly disclosed—is not the same as opposing discrimination that occurred *on the basis* of his disability.

In any event, to prevail on his retaliation claims, Plaintiff cannot merely show that he engaged in protected activity (he did not). He must also present evidence that would permit a reasonable factfinder to conclude that Defendant retaliated against him for that activity. *Ortiz*, 834 F.3d at 765. Here, there is no record evidence that would permit a reasonable jury to find a causal link between any statutorily protected activity and any adverse action. First, as a matter of law, the only adverse action that he experienced was his termination. Increased scrutiny, alleged retaliatory harassment, written counseling, and a paid suspension do not constitute adverse actions absent a material change in job conditions or a tangible, concrete injury—conditions that are not present here. *See, e.g. Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 647 (7th Cir. 2005); *Stutler v. Ill. Dep't of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001); *Mansfield v. Lowe's Home Centers, LLC*, No. 22 CV 6603, 2024 WL 4953696, at *6 (N.D. Ill. Dec. 3, 2024). Second, "the decisionmaker [ ] must be aware of the protected activity to establish a causal connection." *Anderson v. St.*, 104 F.4th 646, 655 (7th Cir. 2024). Evidence of causation can include suspicious timing, statements of animus, differential treatment, or evidence of pretext. *Alley v. Penguin Random House*, 62 F.4th 358, 361

11

(7th Cir. 2023). None exists here. Both Plaintiff and Geouque, the sole decisionmaker for his termination, confirmed they had minimal communication and never discussed Plaintiff's medical conditions or any protected status. SOF ¶¶ 31, 74. Plaintiff's grievance conspicuously makes **no** reference to race, disability, harassment, or protected activity. Likewise, Geouque testified unequivocally that he did not know Plaintiff had a disability, had no knowledge of any accommodation request by Plaintiff, and was unaware of any issues relating to Plaintiff's race, disability, or any need for accommodation, thereby foreclosing any inference that the timing of his termination is evidence of a retaliatory motive. Likewise, the individuals Geouque interviewed (Wright, Holmes, and Tuohy) did not relay any such information to Geouque. Even so, Geouque conducted his own independent investigation. After personally witnessing Plaintiff's combative, insubordinate conduct during their call – behavior consistent with the reports of unprofessionalism and related misconduct that, in Geouque's view, was indicative of an ongoing pattern – Geouque decided to terminate Plaintiff's employment, effective immediately.

Viewing the record in the light most favorable to Plaintiff, no reasonable juror could find that his discharge was the but-for cause of unlawful retaliation. Summary judgment is warranted.

## IV.     Plaintiff's Harassment Claims Fail as a Matter of Law

To prevail on a hostile-work-environment claim under Title VII, Section 1981, or the ADA, Plaintiff must provide evidence showing: (1) he was subject to unwelcome conduct; (2) the conduct was based on his race or disability; (3) the harassment was sufficiently severe or pervasive, both subjectively and objectively, enough to alter the conditions of his employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016); *Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 957 (7th Cir. 2024).

**A.    There is No Evidence the Alleged Harassing Conduct was Race or Disability-Based or Severe and Pervasive**

Plaintiff's allegations fall far short of establishing a hostile work environment. Plaintiff concedes that Tuohy's alleged "harassment" stemmed from the tension that arose after his vendors replaced Tuohy's preferred vendors. Though he speculates that she "hated" that he was black and his vendors were "Mexican," he offers <u>no</u> evidence to support this theory, such as racial or disability-related slurs, remarks, or ridicule, or other conduct by Tuohy that are the traditional hallmarks of a hostile work environment claim. *See Smithson v. Miller*, No. 20CV03021JRSMJD, 2022 WL 4098583, at *2 (S.D. Ind. Aug. 4, 2022), *aff'd sub nom. Smithson v. Austin*, 86 F.4th 815 (7th Cir. 2023) (plaintiff's belief that incidents took place because of her race or disability, supported by nothing more than speculation as to an employer's or co-workers' state of mind, insufficient to create an issue of material fact). As to his PTSD and depression, Plaintiff testified that Tuohy accused him of being loud in meetings following his alleged disclosure of his medical conditions, but admitted he is a "loud person" and expressly denied any connection between his volume and his conditions. Significantly, Plaintiff himself repeatedly and consistently attributed Tuohy's conduct to animus related to the replacement of her "family" as vendors, not Plaintiff's disability or race. In his own words:  "She created a hostile environment. She kept stand-up always on some negativity, you know, **and she did this because [her family] didn't get the bid, that they got fired**." SOF ¶ 49 (emphasis added). These admissions foreclose any reasonable conclusion that her conduct was motivated by his race or his disability.

Plaintiff's allegations of harassment from DJ are even more tenuous. Plaintiff does not allege that DJ made race or disability-based comments and admits that he never told DJ about his PTSD or depression. SOF ¶¶ 51-52. The conduct Plaintiff identifies – becoming loud and disrespectful when Plaintiff neared the receptionist or during public work discussions – reflects, at

most, workplace incivility, not actionable harassment. *See Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) (no liability for hostile work environment,where employee did not allege anyone made any PTSD-related comments, conceded she did not tell any of her coworkers about her PTSD, and other complaints about her coworkers' abusive conduct, such as swearing, refusing to follow her directions, and using disrespectful language, were not focused on her disability).

Even when considered together as a whole, there is no evidence that the "harassing" conduct Plaintiff describes – occasional tension in meetings and isolated incidents of disrespectful language and raised voices – rises to the level of severe or pervasive harassment. Indeed, courts in the Seventh Circuit have routinely rejected hostile work environment claims in circumstances far more egregious than those Plaintiff alleges. *See, e.g.*, *Maldonado v. Invensys Bldg. Systems, Inc.*, 157 Fed. Appx. 904, 906 (7th Cir. 2005) (repeated use of N-word and racial slurs); *Washington v. American Drug Stores, Inc.*, 119 F. App'x 3, 6 (7th Cir. 2004) (use of n-word); *Latham v. Donahue*, 40 F. Supp. 3d 1023, 1031 (N.D. Ill. 2014) (direct verbal attacks and threats of violence).

## B. There is No Basis for Employer Liability

Regardless of whether Tuohy and DJ's conduct constituted actionable harassment (which it did not), Plaintiff's claims fail for the independent reason that there is no basis to impute liability to Defendant. Defendant maintains a comprehensive anti-harassment policy and cannot be liable absent negligence in discovery or remedying the harassment, or – for supervisor conduct where no tangible employment action resulted – if Plaintiff unreasonably failed to take advantage of corrective measures. *Trahanas v. Nw. Univ.*, 64 F.4th 842, 853-854 (7th Cir. 2023).

Here, the record is devoid of any evidence that Defendant was negligent. There is no evidence Plaintiff ever complained about Tuohy and DJ in a way that tied their conduct to his race or disability. Even assuming *arguendo* that Tuohy and DJ are considered Plaintiff's supervisors

14

for purposes of this analysis, Defendant is not vicariously liable. No tangible employment action resulted from their conduct: Wright placed Plaintiff on paid suspension based on his own admissions, and Geouque independently decided to terminate his employment after personally observing his unprofessional conduct. Plaintiff also unreasonably failed to use Defendant's complaint process in manner sufficient to trigger liability. His detailed written grievance makes <u>no</u> mention of Tuohy, race, disability, or harassing conduct—telling omissions that defeat any claim that Defendant was on notice of unlawful harassment. In any event, Holmes took prompt remedial action to address his concerns about Tuohy and DJ's behavior towards him.

## V.  Plaintiff's Remaining Claims are Unrecognized and Have No Legal Basis

Plaintiff's remaining claims can likewise be disregarded. His color discrimination claim, raised for the first time in his Complaint, SOF ¶¶ 3-5, is not "like or reasonably related" to his allegations of discrimination raised in his EEOC Charge and, therefore, is time-barred for failure to exhaust administrative remedies. *Geldon v. S. Milwaukee Sch. Dist.,* 414 F.3d 817, 819 (7th Cir. 2005); *Williams v. County of Cook*, 969 F. Supp. 2d 1068, 1078 (N.D. Ill. 2013). His fraudulent inducement claim relating to his theory of "forced employment" as a Maintenance Director is foreclosed by the at-will nature of his position, which he was free to decline at any time. Finally, his vague allegations of a "conspiracy" to terminate him, SOF ¶ 6, implicating his former coworkers and managers, are not properly pleaded and unsupported by any admissible evidence or a coherent legal theory. *See Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013).

<u>CONCLUSION</u>

For the reasons set forth herein, Defendant Allure Lifestyles Communities, respectfully requests that the Court enter summary judgment in its favor and dismiss the case, *with prejudice*.

Respectfully submitted this 29th day of August, 2025.

CONSTANGY, BROOKS, SMITH, & PROPHETE, LLP

By: */s/*      M. Elysia Baker Analo

Laura Balson (#6291377)
M. Elysia Baker Analo (#6308530)
20 N. Wacker Drive, Suite 4120
Chicago, IL 60606
Telephone: 773.661.4710
lbalson@constangy.com
eanalo@constangy.com

*Counsel for Defendant Allure Lifestyle Communities*

## **<u>CERTIFICATE OF SERVICE</u>**

I, Hannah Caisse, a non-attorney, certify that on this 29th day of August, 2025, I caused the foregoing to be electronically filed using the Court's electronic filing system, which shall send notification of such filing to, and constitute service on, the following party of record:

ONeal Johnson
816 W. 76th Street
Chicago, IL 60620
T: 773-992-6759
Johnsononeal1406@gmail.com


*/s/ Hannah Caisse*
Hannah Caisse