IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ONEAL JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-17062 |
| ) | Hon. Judge Lindsay Clayton Jenkins |
| ALLURE LIFESTYLE COMMUNITIES, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 1
    I.    Plaintiff Has Failed to Comply with Local Rule 56.1 ............................................. 1
    II.   Plaintiff's ADA Claims Fail as a Matter of Law ...................................................... 2
        A.    Plaintiff Was Not a Qualified Individual ...................................................... 2
        B.    Plaintiff's Failure to Accommodate Claim Fails ........................................... 4
    III.  Plaintiff's Disparate Treatment Discrimination Claims Fail as a Matter of Law ..... 6
        A.    Neither Race nor Disability Motivated the Adverse Action .......................... 6
        B.    Plaintiff Presents No Evidence of Pretext ...................................................... 7
    IV.  Plaintiff's Harassment Claims are Unsupported by Any Evidence .......................... 8
    V.   Plaintiff's Retaliation Claims Fail as a Matter of Law ........................................... 10
CONCLUSION ............................................................................................................................. 11

**INTRODUCTION**

Plaintiff's opposition papers[1] fail to provide any admissible evidence to defeat summary judgment on his legally insufficient claims. Plaintiff has ignored or improperly "disputed" his multiple sworn admissions that establish that he did not experience any form of discrimination or retaliation during his employment with Defendant. Defendant's well-developed summary judgment brief and the undisputed record leave no doubt that Plaintiff was terminated for legitimate, nondiscriminatory, and nonretaliatory reasons. Plaintiff has failed to create an issue of fact, and Defendant's Motion for Summary Judgment should be granted as a matter of law.

**ARGUMENT**

**I.    Plaintiff Has Failed to Comply with Local Rule 56.1**

"Local Rule 56.1 sets out the procedure for presenting facts pertinent to a party's request for summary judgment," and "[p]arties have a right to expect that Local Rule 56.1 will be enforced and that facts not properly presented under the rule will be disregarded." *Clay v. Johnson*, No. 16-cv-05748, at *4 (N.D. Ill. Mar. 19, 2020). Plaintiff's Response to Defendant's Statement of Facts ("RSOF") and Statement of Additional Facts ("PSAF") contain multiple violations of Local Rule 56.1 that warrant striking the improper material and deeming Defendant's facts admitted where not properly controverted.

First, he has repeatedly violated Local Rule 56.1(e), as several of his restatements of Defendant's factual assertions are incomplete or misleading. Second, when denying a disputed fact, Plaintiff improperly denies proposed facts without citing to specific evidentiary material that controverts the fact, attempts to contradict his own deposition testimony, sets forth new "facts"

---

[1] Plaintiff filed two opposition briefs: Plaintiff's Response to Defendant's Memorandum in Support of Summary Judgement ("Response"), and Plaintiff's Response In Opposition to Defendant's Motion For Summary Judgement ("Opposition"). [ECF Nos. 88, 89].

not fairly responsive to the asserted fact, or includes argumentative or gratuitous commentary. *See Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 528 (7th Cir. 2000) (plaintiff not entitled to deny facts admitted in deposition); *De v. City of Chicago*, 912 F. Supp. 2d 709, 712 (N.D. Ill. 2012) (nonmovant may not add additional facts to response or misstate the cited record); *Basta v. Am. Hotel Register Co.*, 872 F. Supp. 2d 694, 700 (N.D. Ill. 2012) (striking responses not substantiated by evidence).

Plaintiff's *pro se* status does not excuse his noncompliance with Local Rule 56.1. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). Defendant served Plaintiff with the required notice under Local Rule 56.2, and, as this Court noted, he is an experienced *pro se* litigant. ECF Nos. 45, 84. In light of his clear violations of Local Rule 56.1, this Court should disregard Plaintiff's unsupported and improperly included "facts" and deem admitted any and all of Defendant's material facts not properly controverted.

## II. Plaintiff's ADA Claims Fail as a Matter of Law

### A. Plaintiff was not a Qualified Individual

To survive summary judgment on his ADA claims, Plaintiff "must 'come forward with evidence' that would permit a reasonable jury to conclude that [he] is "a 'qualified individual' under the statute." *Anderson*, 2023 WL 4999897, at *12 (quoting *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996)). Plaintiff cannot satisfy this burden. [2]

An employee is a "qualified individual" under the ADA if, with or without reasonable accommodation, he can perform the essential functions of his position. 42 U.S.C. § 12111(8).

---

[2] Plaintiff cites to *EEOC v Sears, Roebuck & Co.*, 417 F .3d 789, 802 (7th Cir. 2005) to support his claim that the inquiry for determining qualified status "focuses on whether the employee could perform the job's actual duties, not whether the employer subjectively believed the employee was disruptive." Resp. at 1. This case contains no such discussion. Defendant notes that Plaintiff's papers contain multiple citations to legal authority that are misquoted for propositions the cases do not support, undermining the reliability of Plaintiff's filings and indicate that his submissions were not reviewed for accuracy.

2

Critically, "essential functions" are the "fundamental job duties of the employment position the individual with a disability *holds*," not the "marginal" functions." 29 C.F.R. § 1630.2(n)(1) (emphasis added). Plaintiff does not dispute his job duties. RSOF ¶ 11; SOF ¶ 11. Rather, he admits that after his promotion from maintenance technician to Maintenance Director, he "continued to perform the actual physical and technical duties of *maintenance, the essential functions for which he was hired*." Resp. at 2 (emphasis added). This admission is dispositive and fatal to his claim. While the ADA may require accommodations for limitations that prevent an employee from performing their essential functions, it does not protect those who simply prefer a different role.

As a matter of law, an employee who is unwilling, rather than limited, to perform the essential job functions is not a qualified individual under the ADA. *See Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 868 (7th Cir. 2005) (affirming agreement that "[n]o accommodation would make a difference for an employee unwilling to exercise care, accept instruction or take responsibility for getting his work done properly"); *Cohen v. Ameritech Corp.*, No. 02 C 7378, 2003 WL 23312801, at *6 (N.D. Ill. Dec. 23, 2003) (employee not qualified individual because "unwillingness to perform" required duties "had nothing to do with his disability."). Here, the uncontroverted record establishes that Plaintiff was counseled for failing to follow apartment turnover procedures and misrepresenting that a unit was move-in ready when it had not been properly cleaned or completed. SOF ¶ 41; RSOF ¶ 41. He disputes the propriety of the discipline and continues his attempt to submit "evidence" that his supervisor (Holmes), cleaning porter (Reggie), and the leasing manger (DJ) were responsible for the failure. RSOF ¶¶ 42, 44, 45. Whether Holmes directed Reggie to clean the unit, or DJ communicated properly with residents or respectfully with him regarding unit readiness is immaterial. Plaintiff continues to deflect blame, rather than take accountability for the fact that Defendant's expectations were that

he, the Maintenance Director, bore responsibility for oversight of preparing vacant units and supervision cleaning staff. His "unwillingness to perform" his required duties and inability to get along and work collaboratively with the Property team has "nothing to do with" his PTSD and depression. *Grevas v. Vill. of Oak Park*, 235 F. Supp. 2d 868, 875 (N.D. Ill. 2002). He is not a qualified individual under the ADA.

### B. Plaintiff's Failure to Accommodate Claim Fails

Though the parties dispute whether Plaintiff disclosed his conditions to management, he maintains that he communicated a need for help "managing his disability" through: (1) requests that "his supervisors and coworkers intervene when his voice escalated due to his conditions," and (2) and statements to management that he was "sick" and "affected" by workplace hostility. Resp. at 4. He asserts these communications were sufficient to trigger Defendant's duty to engage in the interactive process and the "credibility of witnesses" and their "recollection" these communications, precludes summary judgment. Resp. at 2; Opp. at 2.

However, the Seventh Circuit has long held that an employer's failure to engage in the interactive process, by itself, does not establish ADA liability, and, even so, there is no blanket requirement to initiate accommodation discussions upon learning of a mental health diagnosis. *Rehling v. City of Chicago,* 207 F.3d 1009, 1015-16 (7th Cir. 2000). *Forman v. City of Middleton*, No. 20-CV-516-JDP, 2022 WL 3655264, at *2 (W.D. Wis. Aug. 25, 2022). To survive summary judgment, Plaintiff must show that Defendant's failure to engage in the interactive process led to a failure to identify a reasonable accommodation. *Rehling*, 207 F.3d 1009 at 1015. To be entitled to an accommodation, Plaintiff must demonstrate a limitation preventing performance of an essential job function and a causal link between the limitation and the accommodation sought. *Brumfield v. City of Chi.*, 735 F.3d 619, 633 (7th Cir. 2013). He fails to do so.

4

Even if Plaintiff disclosed his PTSD and depression, he testified that they did not impact his ability to perform his job, testifying "[i]t ain't nothing that I needed" when asked what kind of accommodation he required. SOF ¶ 29. Moreover, the record establishes that any suggestion that his "loudness" is a manifestation of his PTSD and depression is speculative, conclusory, and assumptive. He testified that he is just a "loud person," expressly denying any connection between his volume and his claimed disabilities. SOF ¶ 36. He offers no medical records, treatment notes, or expert opinion that could confirm a causal link. The complete absence of *any* evidence that his elevated voice is, in fact, casually connected to his PTSD and depression confirms what Plaintiff already testified: his loudness is a personality trait, not a disability symptom.

Second, Plaintiff's vague statements about being "sick" and his colleagues' conduct "affecting" him cannot reasonably constitute a request for an accommodation or sufficiently notify Defendant of a need for one. The evidence shows his August 9, 2022 text messages to Holmes referenced a doctor appointment that was not mental-health related treatment. RSOF ¶ 54. Texts about feeling "sick" coupled with confirmation of urology-related testing for "all of [Plaintiff] conditions and illness" cannot support a reasonable inference that he was communicating about his PTSD or depression or expressing a need for mental-health accommodations. *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 571 (7th Cir. 2022) ("An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage.").

"Unless the failure to interact resulted in the loss of a reasonable accommodation that otherwise would have been reached, it is not actionable." *Doner v. City of Rockford, II*, 77 F. App'x 898, 902 (7th Cir. 2003). Even if his managers were sufficiently aware of his conditions and his statements triggered a duty to respond, no reasonable jury could find that Defendant caused any

5

breakdown in the interactive process. Plaintiff identifies no accommodation that he needed that was denied or not provided. His claim fails.

### III. Plaintiff's Disparate Treatment Discrimination Claims Fail as a Matter of Law

#### A. Neither Race nor Disability Motivated the Adverse Action

Plaintiff's disability discrimination claim fails because he cannot show that the sole decisionmaker for his termination, Geouque, knew of his PTSD and depression. The fact that a decisionmaker had no knowledge of a plaintiff's disability at the time of the termination decision, "indicates that [he] did not take that action because of [plaintiff's] disability." *Podlasek v. Off. of State's Att'y of Cook Cnty.*, No. 20 C 2357, 2022 WL 17718412, at *7 (N.D. Ill. Dec. 14, 2022) (citing *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995)). He offers no admissible evidence that Geouque was aware of his PTSD or depression. Instead, he asserts he informed "management" and "whether Geouque personally claim[s] ignorance does not eliminate factual disputes about Defendant knowledge." RSOF ¶ 77. This argument fails. Like the plaintiff in *Hedberg*, Plaintiff's desired inference, that other managers must have told Geouque of Plaintiff's conditions "is not reasonable" and does not satisfy his burden of "producing some defense to a summary judgment motion." *Id.* at 932-933.

Likewise, Plaintiff offers no evidence that his termination was racially motivated.[3] He identifies no comparators, he was replaced by a Black male (Williams), and he offers no evidence of conduct of racial character by Geouque. Nor can he establish cat's paw liability, which requires a showing of both a biased actor with discriminatory animus whose input was the "proximate cause" of his termination. *Eggl v. Chosen Healthcare*, No. 1:18-CV-310, 2020 WL 4059184, at *7

---

[3] Plaintiff's color discrimination claim also fails. His administrative charge did not identify color as a basis of discrimination, and nothing in his charge or the record indicates that the particular hue of his skin motivated any complained-of conduct. Accordingly, his claim is unexhausted and time-barred.

(N.D. Ind. July 20, 2020). Here, Tuohy's motive is entirely explained by nepotism and family loyalty, not racial or disability animus. *See Washington v. SmithKline Beecham Corp.*, No. 5:09-CV-320-BO, 2010 WL 11622736, at *1 (E.D.N.C. Jan. 27, 2010) ("Adverse employment decisions motivated by friendship or nepotism are not actionable under Title VII"); *Clement v. Madigan,* 820 F.Supp. 1039, 1046-47 & n. 10 (W.D. Mich.1992) (evidence of nepotism did not raise inference of pretext or racial discrimination). Both Holmes and DJ are black, weakening any inference of racial animus. *See Illinois Gastroenterology Group, LLC,* 19 C 1522, 2021 WL 1088316, at *6 (N.D. Ill. Mar. 22, 2021). Finally, both Wright and Geouque acted upon their personal experiences with Plaintiff, breaking any causal link for cat's paw liability.

### B. Plaintiff Presents no Evidence of Pretext

Plaintiff fails to point to any admissible evidence that Defendant's proffered reasons for his discipline are "unworthy of credence." Defendant permissibly presents evidence and testimony that resident complaints were reported to management to show how those complaints affected decisionmakers, as required to rebut that its reasons were pretextual. *Vallabhapurapu v. First Nat'l Bank of Chicago*, 998 F. Supp. 906, 909 n.3 (N.D. Ill. 1998) (denying motion to strike[4] subordinates' complaints to regional manager, defendant permissibly presented to show effect on managers assessment of plaintiff, as required to rebut argument that manager's reasons for demotion were pretext for discrimination). These statements are not introduced for their truth, but rather, because it is proper to present evidence relevant to decisionmakers' state of mind. *See Walker v. Alcoa, Inc.*, No. 4:06-CV-120-JVB, 2008 WL 2356997, at *7 (N.D. Ind. June 9,

---

[4] Moreover, Plaintiff is not entitled to "confront" those residents or obtain their identifies. His position taken to its logical end would mean employers in the service industry could never discipline employees based on customer complaints unless they identified those complainants for cross-examination. This is illogical. In any event, if Plaintiff believed Defendant's redactions were improper, the remedy was to move to compel—which he did not do. Plaintiff's Motion to Strike Defendant's Third-Party Statements should be denied.

7

2008). His displeasure that Geouque did not detail every incident demonstrating his pattern of misconduct does not create a genuine issue of fact. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 577 (7th Cir. 2015) ("Where an employer relies on multiple reasons for the termination, its failure to address *all* of the reasons in *each* communication about the employee is not enough to show contradictions or shifts in rationales that suggest pretext."). Viewing the record as a whole under *Ortiz*, his assertions that Defendant has fabricated resident complaints about him, lied about his presence and disruptions at morning meetings, and falsified write ups are supported only by his belief in an alleged "conspiracy" to terminate him, implicating every supervisor, corporate managers, and even HR. This is the precise speculative "leap of logic" that cannot survive summary judgment. *Eggl*, 2020 WL 4059184, at *10.

## IV.     Plaintiff's Harassment Claims are Unsupported by Any Evidence

Neither Title VII nor ADA offers Plaintiff a remedy unless he can produce evidence that the alleged harassment was "based on" his race or disability. His opposition fails to do so. Assuming *arguendo* that Plaintiff is a qualified individual under the ADA, he proffers no evidence that any conduct of Tuohy, Holmes, or DJ was in any way connected to his PTSD or depression, or that DJ was even aware of his conditions. His disability harassment claim rests almost entirely on Tuohy telling him he was too loud in meetings. However, based on the record, no trier of fact could conclude that telling him to lower his volume, the exact accommodation he contends he was owed, was designed to harass, and humiliate him, much less that it was "based on" his disability.

Plaintiff likewise presents no evidence whatsoever to establish a connection between the challenged conduct and his race, as is necessary to survive summary judgment. *Arnold v. VisionTek Prods., LLC*, No. 13-cv-00613, at *19 (N.D. Ill. July 17, 2017) (collecting cases). Plaintiff has not "pointed to any racial slurs, comments, or jokes" or "shown that similarly situated nonblack

8

employees were treated better than he was." *See Lewis v. Ivy Tech State College*, Cause No.: 1:04-CV-459-TS, at *6 (N.D. Ind. May 18, 2006). Plaintiff's Response newly asserts that Tuohy called him "aggressive", suggesting race and disability stereotyping, but this allegation appears nowhere in his Complaint or his sworn deposition testimony. The Court should disregard this unverified and procedurally improper allegation. The only admissible "evidence" he musters is his speculative testimony that Tuohy was upset that he "a black man, replaced her preferred vendors with Latino vendors." Resp. at 6. Yet he conceded in discovery, and doubles down in his opposition, that her "harassment" was connected to her family losing vendor work. RSOF ¶ 49. Even crediting his account that Tuohy was upset with him for Defendant's decisions affecting her family, he offers no explanation for why her resentment over the replacement of white workers with Latino workers would manifest as hostility towards him because of *his* race, black.

      Even so, viewing Plaintiff's version of the facts in the light most favorable to him, <u>none</u> of the reported conduct is sufficiently severe, pervasive, or objectively offensive to create a hostile environment, even when taken together as a whole. *See Ranger v. Colvin*, 983 F. Supp. 2d 966, 979 (N.D. Ill. 2013) ("While Plaintiff may feel that [her supervisor's] disrespect was severe and pervasive, her subjective feelings do not rise to the level of actionable hostility."); *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 68 (2006) ("[P]ersonality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers' are not actionable under Title VII"). Even if the alleged harassment created a hostile work environment (which it did not), Defendant's Ellerth/Faragher defense precludes liability. *See Johnson v. West*, 218 F.3d 725, 731-32 (7th Cir. 2000) (no tangible employment action where plaintiff's dismissal was not result of supervisor's harassment). Plaintiff does not dispute that Defendant maintains an established anti-

9

harassment policy with complaint procedures, RSOF ¶ 4, and he presents no evidence that he ever complained to Geouque or management that he was being harassed based on race or disability.

### V. Plaintiff's Retaliation Claims Fail as a Matter of Law

It is difficult to discern Plaintiff's theory of retaliation, as his Response appears to hallucinate easily disprovable facts. He incorrectly states that his protected activity included filing EEOC charges and a written grievance alleging targeting based on his race and medical conditions, while also claiming Holmes suspended him and Geouque terminated him "weeks later." Resp. 5. This is demonstrably false. His sole EEOC charge was filed after his termination, he cannot present evidence that his grievance mentions his race or conditions, Wright suspended him, and Geouque terminated him two days later. RSOF ¶¶ 3, 64; SOF ¶¶ 47, 77. He claims protected conduct includes verbal complaints of harassment and differential treatment because of his race and medical conditions and his objections to be being "pressured" into the Maintenance Director role. Resp. at 4. The record, however, contains no admissible evidence that Plaintiff made verbal complaints linking his complaints of harassment and mistreatment to any protected characteristic. Complaints that perceived mistreatment exacerbated his PTSD and depression are not protected oppositional conduct under the ADA. Memo at 8 n.3. Finally, a promotion is not an unlawful employment practice, and thus his "objections" to it cannot constitute protected conduct.

Even assuming temporal proximity between his unprotected complaints and his suspension and termination, there is no triable issue of causation. The timing of events in this case is not suggestive of retaliation, either alone or in the context of other circumstances. He identifies no evidence of differential treatment or retaliatory animus by Geouque, Holmes, or Tuohy. He offers no evidence that either his suspension or termination were pretextual. Against this backdrop, no reasonable factfinder could conclude that his termination was motivated by retaliation.

## CONCLUSION

The Court should grant Defendant's motion, enter judgment on Defendant's behalf, dismiss Plaintiff's lawsuit *with prejudice*, and award Defendant any relief deemed just and proper.

Respectfully submitted this 21th day of October, 2025.

**CONSTANGY, BROOKS, SMITH, & PROPHETE, LLP**

By: */s/ M. Elysia Baker Analo*

Laura Balson (#6291377)
M. Elysia Baker Analo (#6308530)
20 N. Wacker Drive, Suite 4120
Chicago, IL 60606
P: 773.661.4710
lbalson@constangy.com
eanalo@constangy.com

*Attorneys for Defendant*
*Allure Lifestyle Communities*

11

## **CERTIFICATE OF SERVICE**

I, M. Elysia Baker Analo, hereby certify that on October 21, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following party of record:

ONeal Johnson
816 W. 76th Street
Chicago, IL 60620
T: 773-992-6759
Johnsononeal406@gmail.com

                                                                      */s/ M. Elysia Baker Analo*